KATE GURNEY *vs.* MICHAEL PIEL.

Somerset.    Opinion August 10, 1909.

*Highways.    Teams.    Automobiles.    Negligence.    Verdict.*

The law requires automobilists like all other citizens to have regard for the rights of others.   It may be convenient and even fascinating to reach one's destination at the earliest possible moment, but the safety of travellers. must not be sacrificed to speed.

While it is true that both a person with an automobile and a person with a team has the right to use the highway with his respective vehicle, yet it is also true that each is obliged to exercise his rights with due regard to the corresponding rights of the other, and neither has a monopoly of the highway.

The plaintiff recovered a verdict for $237.00 for personal injuries sustained in a collision between her team and the defendant's automobile, alleged to be due to defendant's negligence.   On motion to set the verdict aside, *Held:* That the evidence of the plaintiff, if believed, together with certain facts developed by the defense, warranted the verdict.   The narrowness of the road, the frightened appearance of the plaintiff's horse, and the space between the two vehicles were all apparent to the defendant.   If he took his chances or miscalculated the space he cannot now complain.   Had he been willing to wait a few minutes, he could have passed with entire safety as there was a wide space a short distance ahead.

On motion by defendant.    Overruled.

Action on the case to recover damages for personal injuries sustained by the plaintiff in a collision between her team and the defendant's automobile, caused by the alleged negligence of the defendant.   The writ also contained a count in trespass for running into the plaintiff's carriage and throwing her violently to the ground.   Plea, the general issue.   Verdict for plaintiff for $237. The defendant filed a general motion to have the verdict set aside.

The case is stated in the opinion.

*Merrill & Merrill,* for plaintiff.

*E. F. Danforth and Gould & Lawrence,* for defendant.

SITTING: WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

CORNISH, J. The plaintiff recovered a verdict of $237 for personal injuries sustained in a collision between her team and the defendant's automobile, alleged to be due to defendant's negligence. The case is before the Law Court on defendant's motion to set aside the verdict as against the evidence.

On September 14, 1905, the plaintiff was driving north on the Canada road towards and near Jackman Village, in a covered carriage, drawn by a single horse. A short distance south of the village she was overtaken by defendant in his automobile and in the attempt on the defendant's part to pass the plaintiff's team, there was a collision, the rear right wheel of the plaintiff's carriage and the front left wheel of the automobile coming in contact. The plaintiff was thrown from the carriage and sustained injuries not serious. Due care on the part of the plaintiff is not controverted and the single issue is whether the jury was warranted from the evidence in finding negligence on the part of the defendant.

The case shows that the plaintiff was driving at the rate of four or five miles an hour and was entirely unaware of the approach of the automobile before the collision occurred. The Parish priest who was in the convent grounds shouted and attempted to attract her attention and to warn her of the machine which he saw approaching from behind but he was unable to do so. The reason which she gives is that her attention was fixed upon managing her horse, that was showing signs of fear as she was passing the convent, which she attributed to the noise connected with the working of a derrick on the convent grounds, but which evidently was caused by the approaching automobile, the noise of which had caught the ear of the horse but not her own. She says that she was driving in the center of the road, the wrought part of which at that point was only fourteen to sixteen feet wide. The horse "kept going faster and faster" as she described it and when nearly opposite the Murtha house the crash came and she was suddenly thrown against the dasher and thence upon the ground. The defendant's version is that he first saw the team about a thousand feet ahead, when he was travelling at the

rate of seven or eight miles an hour; that he sounded his horn frequently in order to warn the plaintiff of his approach; that he slowed down until when within about one hundred feet of the team they were travelling at the same rate, that this continued for a short time, when the plaintiff turned her horse somewhat towards the left of the road, and thinking there was space enough he attempted to pass on the right, moving at about six miles an hour, and that when the two vehicles were nearly abreast, the plaintiff's horse swerved towards the car bringing her right hind wheel in contact with the left forward wheel of the car and causing the accident; in other words that the team ran into the car instead of the car running into the team. The plaintiff replies that the defendant's speed was far greater than he admitted, that the plaintiff did not turn towards the left, as she had no occasion to do so, not knowing of any approaching car, and that if the horse did in his fright swerve slightly towards the car at the moment of passing, it was a condition that the defendant if acting with due care and with a proper regard for the rights of the plaintiff should have anticipated and avoided.

These issues and inferences were sharply before the jury. It was for them to decide in the first instance just what the conditions were and then to say whether under those conditions the defendant conducted himself as the ordinarily prudent man would, or whether he fell below the required standard. The jury have found negligence on the defendant's part, and we see no reason to disturb their finding. The evidence of the plaintiff if believed, together with certain facts developed by the defense, warranted the verdict. The narrowness of the road, the frightened appearance of the plaintiff's horse, and the space between the two vehicles were all apparent to the defendant. If he took his chances or miscalculated the space he cannot now complain. Had he been willing to wait a few moments, he could have passed with entire safety as there was a wide space a short distance ahead. The plaintiff testifies that immediately after the collision she said to the defendant "I should have thought you would have waited a minute," and his reply was "I thought I would go by you." The defendant, who was sitting on the front seat with the chauffeur seems to have paid slight atten-

tion to the plaintiff or her team as appears from the following significant testimony :

"Q.   Did you see the woman pulling on the reins?

A.   I didn't take so much interest at all in the thing.

Q.   You didn't look to see?

A.   I was looking on my business; you understand that was another thing.   Always we go ahead and don't think of such things like that you know."

The law requires automobilists, like all other citizens, "to think of such things" and to have regard for the rights of others.   It may be convenient and even fascinating to reach one's destination at the earliest possible moment, but the safety of travellers must not be sacrificed to speed.   It is true that both the plaintiff and the defendant had the right to use the highway with their respective vehicles but it is also true that each was obliged to exercise his right with due regard to the corresponding rights of the other and neither had a monopoly.   In a very recent case this court has laid down the general principles governing the mutual rights and duties in these words :   "Automobiles are now recognized as legitimate means of conveyance on the public highway.   The fact that horses unaccustomed to see them are likely to be frightened by the unusual sound and appearance of them, has not been deemed sufficient reason for prohibiting their use, but it is an element in the question of due care on the part of the driver of both horses and motor cars, and a consideration to be entertained in determining whether such care has been exercised to avoid accident and injury in the exigencies of the particular situation."   *Towle* v. *Morse*, 103 Maine, 250.

Whether this collision occurred through the negligence of the defendant in attempting to pass in too narrow a space, "in attempting to take the opening" as the defendant's son expressed it, or through his failure to properly appreciate the conduct of the horse, as the defendant himself rather admits, or both combined, or whether it was an unavoidable accident, was for the determination of the jury in the first instance and it is the opinion of the court that their finding was authorized by the evidence.

*Motion overruled.*